# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**ANUAL TERRERO ROSADO**,

*Petitioner*,

v.

**LUIS SOTO**, *et al.*,

*Respondents*.

No. 26-cv-02079

**ORDER**

**THIS MATTER** comes before the Court by way of a Petition for Writ of Habeas Corpus, (ECF No. 1), and the Court's prior February 28, 2026, Order, (ECF No. 3); and

**WHEREAS**, Petitioner is a native and citizen of the Dominican Republic who entered the United States on or around July 5, 2022. Petitioner was then released on parole on July 6, 2022, and later filed an affirmative application for asylum with U.S. Citizenship and Immigration Services, which remains pending; and

**WHEREAS,** on January 27, 2026, Petitioner was re-detained at his scheduled ICE check-in appointment and currently remains in detention at Delaney Hall Detention Facility in Newark, New Jersey; and

**WHEREAS,** on February 28, 2026, this Court ordered Respondents to file an expedited answer by March 2, at 4:00 p.m., identifying, among other things, the specific statutory or other legal authority for Petitioner's detention; the procedural due process afforded prior to detention; whether a final order of removal exists; any alleged changed circumstances justifying detention; whether Petitioner has received a bond hearing; and the current status of all related immigration proceedings; and

**WHEREAS,** Respondents filed an answer and letter response on March 2, 2026, which they acknowledge is incomplete and does not fully respond to the Court's Order.[1] (ECF No. 5 at 2). Additionally, Respondents acknowledge that the statutory arguments and facts in this case are materially identical to those that the Court has already rejected in *Bethancourt Soto v. Soto*, ____ F. Supp. 3d ____, No. 25-16200, 2025 WL 2976572 (D.N.J. Oct. 22, 2025) and other cases. (*Id.* at 1); and

**WHEREAS**, it appears to the Court, at a minimum, that Petitioner is being unlawfully detained under Respondents' repeated invocation of 8 U.S.C. § 1225 because, as set forth in *Bethancourt Soto*, Petitioner was apprehended inside the United States after residing here for an

---

[1] The Court is compelled to address a broader and increasingly troubling pattern which many other courts across the country have identified. Respondents have persistently failed to comply with lawful orders of federal district courts—conduct that can no longer be attributed to mere oversight, but is more accurately described as reckless disregard for judicial authority, if not willful noncompliance. *See Cartagena Hueso v. Soto*, No. 26-1455, slip op. at 6 (D.N.J. Feb. 26, 2026) ("[W]hile the procedures for the Government's immigration arrest and detention may have had the initial appearance of negligence, they have since slid downward into manifest recklessness."). *See also* Order to Show Cause, *Singh v. Tsoukaris*, No. 26-cv-01531 (D.N.J. filed Feb. 17, 2026), ECF No. 10.

To the extent the Government asserts that compliance is not feasible, that is no excuse. The Government continues to advance a policy of mandatory detention of non-citizens based upon a legal theory that no prior administration has ever advanced and that courts across the country have repeatedly rejected. *See infra*. And it is clear to this Court that the Government intends to continue to do so at least until there is a decision from this Circuit and/or the Supreme Court expressly forbidding them from doing so. But having chosen to do so, the Government places its conduct within the purview of the Court every time it is challenged by a petitioner—consuming judicial resources in the process—and the Government must accept the consequences that follow. That includes responding to its orders and providing the Court with the most basic documentation needed to ensure meaningful judicial review, and properly staffing its offices charged with defending its actions with attorneys able to competently handle such matters.

extended period, and therefore he should have been detained under 8 U.S.C. § 1226,[2] which requires an opportunity to seek bond;[3] and

---

[2] The Court notes that 8 U.S.C. § 1252(b)(9) does not strip the Court of jurisdiction over Petitioner's challenge to his *continued* detention because the challenge is collateral to "the removal process," and is not "inextricably linked" to any removal action. *See Khalil v. President, United States*, No. 25-2162, 2026 WL 111933, at *9 (3d Cir. Jan. 15, 2026); *Kourouma v. Jamison*, No. 26-0182, 2026 WL 120208, at *3 (E.D. Pa. Jan. 15, 2026) ("[W]hether a bond hearing is required prior to detention . . . is collateral to the removal process." (cleaned up)); *Cantu-Cortes v. O'Neill*, No. 25-6338, 2025 WL 3171639, at *1 (E.D. Pa. Nov. 13, 2025) (same); *see also Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (explaining that § 1252(b)(9) did not bar consideration of bond related issues under 8 U.S.C. §§ 1225 and 1226 because the noncitizens "[were] not asking for review of an order of removal, [were] not challenging the decision to detain them in the first place or to seek removal, and [were] not . . . challenging any part of the process by which their removability [was to] be determined" (cleaned up)). Here, the Petitioner's challenge to his continued detention "does not argue that his confinement is unlawful because the Government's removal action is itself invalid." *Kourouma*, 2026 WL 120208, at *3. Rather, the claim "challenges the Government's authority to detain him without a bond hearing," which is "not . . . decided through the [petition for review] process, nor is it capable of review once the immigration courts issue a final order on removal." *Id*. (cleaned up); *see also Khalil*, 2026 WL 111933, at *12 (explaining that challenges to "the length of confinement without a bond hearing . . . [do] not get channeled into the . . . [petition for review] process").

[3] While the Government represents that Petitioner received a bond hearing on February 25, 2026, (ECF No. 5 at 3), that development does not alter the Court's analysis, as the Government expressly acknowledges that Petitioner's detention was predicated on § 1225(b)(2), not § 1226(a). (*Id*.) A subsequent bond hearing cannot retroactively recharacterize an unlawful § 1225(b) detention as a lawful § 1226(a) detention, as the legality of custody turns on the statutory authority invoked at the outset, not on *post hoc* procedural measures. *See infra*.

Moreover, the February 25 hearing was substantively deficient. Under § 1226(a), the Immigration Judge must conduct an individualized assessment addressing, at minimum, danger to the community and risk of flight. *See Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398 (3d Cir. 1999). Here, there was no such analysis, and the Immigration Judge summarily concluded that Petitioner was ineligible for bond based solely on *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), without engaging in the required discretionary factors. That reasoning is circular: it presumes the applicability of § 1225(b)—the very premise under challenge—to deny bond eligibility. Courts are not required to defer to agency interpretations that contravene the governing statutory framework. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (limiting deference where an agency interpretation exceeds statutory bounds). Accordingly, the provision of a cursory and wholly deficient bond hearing does not cure the underlying statutory defect in Petitioner's detention.

**WHEREAS**, the Court notes that federal courts have in near unanimity[4] similarly rejected the Government's position in approximately 300 cases to date, a number which climbs with every passing day. *See, e.g., Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *4–5 (E.D. Pa. 2025) (noting "the law is clear" and that "of the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here. Those decisions are plainly correct."); *see also* App., *Demirel,* 2025 WL 3218243 (ECF No. 11-1) (collecting cases); and

**WHEREAS**, because the basis for the Petitioner's continued "detention [was] blatantly unlawful from the start, the only commensurate and appropriate equitable remedy to even partially restore [Petitioner] is to immediate[ly] release him and enjoin the Government from further similar transgressions," *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 366, 371–73 (S.D.N.Y. 2019) ("[T]he Supreme Court has repeatedly upheld prisoners' rights to challenge the constitutionality of their detentions, and allow[ed] courts to implement corrective remedies, regardless of whether there were other bases for the petitioners to be subsequently detained."); and

**WHEREAS**, the Court declines to allow Respondents to transform an unlawful detention into a lawful one through alternative, *post hoc* justifications presented during litigation, as doing so would give the Government a free pass to violate a person's statutory and constitutional rights

---

[4] The Court is aware of the Fifth Circuit's recent decision reaching a contrary conclusion. That decision, however, is not binding on this Court, and the Court is unpersuaded by its reasoning for many of the reasons articulated in Judge Douglas's dissent, including that the majority's interpretation risks rendering significant portions of the statutory scheme superfluous and internally inconsistent. *See Buenrostro-Mendez v. Bondi*, _____ F.4th _____, Nos. 25-20496 & 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

first and search for authority later;[5] and

  **WHEREAS**, in any event, the Government does not allege that Petitioner is a flight risk, a danger to the community, or any other basis for denying bond and has "failed utterly to articulate a legitimate interest in the Petitioner being detained." *Elias v. Knight*, ____ F. Supp. 3d ____, No. 25-00594, 2025 WL 3228262, at *9 (D. Idaho Nov. 19, 2025); and

  **WHEREAS**, in ordering Petitioner's immediate release, this Court joins the growing number of courts in this District and around the country that have and continue to do so.[6]

  **IT IS,** on this 2nd day of March, 2026,

  **ORDERED** that Petitioner's § 2241 Petition is **GRANTED**; Respondents shall **on this date IMMEDIATELY RELEASE** Petitioner under the same conditions, if any, that existed prior to his detention, including, but not limited to: (1) **immediate** release in the State of New Jersey, if Petitioner was initially arrested in New Jersey, or if not initially arrested in New Jersey, as close

---

[5] *See, e.g.*, *Lopez-Campos v. Raycraft*, No. 25-12486, 2025 WL 2496379, at *7 & n.4 (E.D. Mich. Aug. 29, 2025) (citing cases) ("The Court cannot credit this new position that was adopted *post-hoc*, despite clear indication that Lopez-Campos was not detained under this provision."); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) (releasing petitioner and explaining that the court "cannot credit Respondents' new position as to the basis for . . . detention, which was adopted *post hoc* and raised for the first time in this litigation"); *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 46 n.8 (M.D. Pa. 2025) (releasing petitioner and discussing the impropriety of allowing the government to proceed on "*post hoc* justifications for detention"); *cf. Marshall v. Lansing*, 839 F.2d 933, 943–44 (3d Cir. 1988) ("[W]hen reviewing an administrative agency's decision, a court is generally not seeking some hypothetical rational support for the agency's action. A court must review the agency's actual on-the-record reasoning process . . . not a *post hoc* rationalization, or agency counsel's in-court reasoning.").

[6] *See, e.g.*, *Ramos v. Rokosky*, No. 25-15892, 2025 WL 3063588 (D.N.J. Nov. 3, 2025); *Huang v. Almodovar*, No. 25-9346, 2025 WL 3295912 (S.D.N.Y. Nov. 26, 2025); *Rodriguez-Acurio v. Almodovar*, ____ F. Supp. 3d ____, No. 25-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025); *Quispe v. Rose*, ____ F. Supp. 3d ____, No. 25-02276, 2025 WL 3537279 (M.D. Pa. Dec. 10, 2025); *Salinas v. Woosley*, No. 25-121, 2025 WL 3243837 (W.D. Ky. Nov. 20, 2025); *Elias*, 2025 WL 3228262; *Faizyan v. Casey*, No. 25-2884, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025); *Simanca Gonzalez v. Aldridge*, No. 26-0055, 2026 WL 313476 (S.D.W. Va. Feb. 5, 2026).

to the place of initial arrest as reasonably practicable no later than twenty-four (24) hours after the entry of this Order; (2) without the imposition of additional conditions (such as ankle monitors or electronic tracking devices); and (3) with all clothing and outerwear worn at the time of initial arrest, or other appropriate attire; and it is further

**ORDERED** that Respondents shall return to Petitioner all personal property belonging to Petitioner—including, but not limited to, any driver's license, passport, immigration documents, currency, or cellphone—that was seized at the time of initial arrest and that is currently in their custody, possession, or control, whether maintained directly by Respondents or by any contracted or affiliated facility, and that such property shall be returned in the same condition as it existed immediately prior to Petitioner's arrest; and it is further

**ORDERED** that Respondents shall file a letter on the docket confirming the date, time, and location of Petitioner's release and certifying that the conditions set forth above have been satisfied; and it is further

**ORDERED** that Respondents are **PERMANENTLY ENJOINED** from rearresting or otherwise detaining Petitioner under § 1225, which this Court has found inapplicable to him; and it is further

**ORDERED** that Respondents shall not arrest, detain, or otherwise take Petitioner into custody under 8 U.S.C. § 1226(a) for a period of fourteen (14) days following his release, so as to ensure full effectuation of this Court's judgment and to prevent circumvention of the relief granted; and

**ORDERED** that any future detention of Petitioner must comply with all statutory and constitutional requirements, including the identification of a lawful statutory basis for detention and the provision of adequate procedural and substantive due process; and it is further

**ORDERED** that, to the extent that Respondents seek to re-arrest or otherwise re-detain Petitioner under any statutory authority, including but not limited to §§ 1225 or 1226, this Court shall retain jurisdiction over the matter and Petitioner may move to reopen these proceedings before this Court without the need to file a new habeas petition; and it is further

**ORDERED** that the hearing previously scheduled for March 3, 2026, at 9:00 a.m. is **CANCELED**; and it is further

**ORDERED** Plaintiff shall file any application for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, within fourteen (14) days of the entry of this Order. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, ____ F.4th ____, No. 24-2990, 2026 WL 263483, at *1 (3d Cir. Feb. 2, 2026); and it is finally

**ORDERED** that the Clerk of the Court shall **CLOSE** this case.

_____
**CHRISTINE P. O'HEARN**
**United States District Judge**